IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SKY MOTOR CARS | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 09-4055 |
| AUTO SPORT DESIGNS, INC. | : | |

**SURRICK, J.**                                                                                          **JULY  23 , 2012**

## MEMORANDUM

Presently before the Court is Defendant Auto Sport Designs, Inc.'s Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2).[1]  (ECF No. 13.)  For the following reasons, Defendant's Motion will be denied.

**I.    BACKGROUND**[2]

Plaintiff Sky Motor Cars, an automotive retailer, is incorporated and based in the Commonwealth of Pennsylvania.  (Compl. ¶¶ 1, 6, ECF No. 1.)  Defendant, an automotive business specializing in the sales service, and restoration of exotic cars, is incorporated and based in the State of New York.  (*Id.* at ¶¶ 2, 7.)  In September 2008, Plaintiff bought a 2003 Aston Martin automobile intending to resell it at a profit.  (*Id.* at ¶ 9.)  The Aston Martin was in good condition except for a clicking sound that occurred when the engine was operating.  (*Id.* at ¶ 10.)  In October 2008, Plaintiff entered into a contract with Defendant in New York in order to

---

[1] Defendant originally filed a motion to dismiss for lack of subject matter jurisdiction but has since withdrawn it.  (ECF No. 17 at 9.)

[2] When reviewing a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2), the Court accepts all factual allegations in the Complaint to be true and draws all reasonable inferences in favor of Plaintiff.  *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002).

investigate and remedy the clicking sound problem. (*Id.* at ¶ 11.) The Aston Martin was sent to Defendant via flatbed truck on October 21, 2008. (*Id.* at ¶ 12.)[3] After receiving the vehicle, Defendant used a "trial and error" method in an attempt to fix the engine noise. (*See* Compl. ¶ 14.) Plaintiff and Defendant communicated with each other on a regular basis by both telephone and e-mail during the four months that Defendant was working on the vehicle. (*See* Sholder Aff. ¶¶ 6-23, Pl.'s Opp. Ex. 3, ECF No. 16.)

In March of 2009, Defendant's general manager took the car for a test drive. (Compl. ¶ 22.) During the test drive, the engine caught fire. (*Id.* at ¶ 23.) As a result of the damage to the vehicle, the Aston Martin was a total loss. (*See id.* at ¶ 25.) Plaintiff filed a Complaint against Defendant on September 4, 2009. (*Id.* at ¶¶ 27-38.) Plaintiff asserts the following claims: breach of contract (Count I), negligence (Count II) and unjust enrichment (Count III). On January 8, 2010, Defendant filed an Answer to Plaintiff's Complaint. (Answer, ECF No. 4.) In the Answer, Defendant asserts as an affirmative defense that it is not subject to personal jurisdiction in this Court. (*Id.* at ¶ 40.) On April 1, 2010, Defendant filed the instant Motion to Dismiss, seeking dismissal of the case for lack of personal jurisdiction. (Def.'s Mot., ECF No. 13.)

---

[3] Defendant claims that Plaintiff sent the Aston Martin to Defendant "on its own" by "unilaterally dropp[ing] off the Aston Martin at Autosport's premises in New York" so that the car "literally arrived on Autosport's doorstep." (Def.'s Reply, ECF No. 17 at 1-2 (under seal).) Plaintiff asserts that Brett Sholder, Defendant's owner, had "several conversations" with Defendant's service manager and owner, who requested the car be sent to them, before sending the car to Defendant. (Pl.'s Surreply, ECF No. 20 at 2-3.)

Defendant claims that the car was sent from Plainview, New York. (Def.'s Reply 4.) Plaintiff claims that the car was actually sent from West Chester, Pennsylvania, but it had to be stored in Plainview for the night because it arrived when Autosport had already closed for the day. (Pl.'s Surreply 2.)

## II. LEGAL STANDARD

A federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by law of such state. Fed. Rules Civ. Proc. 4(k)(1)(A). The Pennsylvania long-arm statute provides for the exercise of jurisdiction over non-resident defendants. 42 Pa. Cons. Stat. Ann. §§ 5301, 5322; *Resnick v. Manfredy*, 52 F. Supp. 2d 462, 466 (E.D. Pa. 1999). A defendant may be subject to personal jurisdiction under the theory of "general jurisdiction" if the defendant had maintained continuous and systematic contacts with the forum. *Resnick*, 52 F. Supp. 2d at 466. A defendant may be subject to personal jurisdiction under the "specific jurisdiction" theory if the plaintiff's cause of action arises out of the defendant's activities, such that the defendant should reasonably anticipate being haled into court in the forum state. *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

In deciding a motion to dismiss, any factual disputes should be resolved in favor of the plaintiff. *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 665-66 (3d Cir. 1988); *Z-Man Painting, LLC v. Generation Builders, Inc.*, No. 04-4489, 2006 WL 47378, at *2 (E.D. Pa. Jan. 6, 2006). Moreover, all allegations made by a plaintiff in the complaint will be regarded as true. *Brown v. AST Sports Science, Inc.*, No. 02-2682, 2002 WL 32345935, at *2 n.1 (E.D. Pa. June 28, 2002) (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992) ("We are satisfied that courts reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff"). However, a plaintiff may not rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion. *Patterson v. F.B.I.*, 893 F.2d 595, 603-04 (3d Cir. 1990)

(citing *Time Share Vacation Club v. Atl. Resorts, Ltd.,* 735 F.2d 61, 67 n.9 (3d Cir. 1984)). Once a defendant makes a 12(b)(2) motion, the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. *Id.* at 604.

## III.   DISCUSSION

### A.   General Jurisdiction

To establish general jurisdiction, the plaintiff must demonstrate that the defendant has maintained continuous and systematic contacts with the forum. *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996). For a court to find that it has general personal jurisdiction under 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(iii), the plaintiff must show that the defendant maintains "a continuous and systematic part of its general business within this Commonwealth." 42 Pa. Cons. Stat. Ann. § 5301(a)(2)(iii); *see also Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 541 (3d Cir. 1985); *Davis v. PGNI Charles Town Gaming, LLC,* No 07-2352, 2007 WL 4553695, at *2 (E.D. Pa. Dec. 26, 2007) (finding that "only when the 'continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities' may a court assert general jurisdiction over a corporate defendant") (quoting *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir.1993)). The "continuous and systematic contacts" standard for general jurisdiction is "not an easy one to meet." *Surgical Laser Tech., Inc. v. C.R. Bard, Inc.*, 921 F. Supp. 281, 284 (E.D. Pa. 1996); *see also Brown*, 2002 WL 32345935, at *4 (establishing that "a defendant's forum activities must be 'extensive and pervasive' in order to be considered continuous and substantial"). For example, in *Gehling*, the Third Circuit held that the court could not exercise general jurisdiction over a defendant school

with regard to the plaintiff's contract and tort claims, even though the school advertised in two newspapers circulated extensively in Pennsylvania, had six percent of its students from Pennsylvania, advertised on Philadelphia radio and television, and entered into a long-term arrangement with a Pennsylvania school. 773 F.2d at 542.

In the instant case, Plaintiff has not produced sufficient evidence to establish continuous and systematic contacts to the extent necessary to establish general jurisdiction. Plaintiff relies almost exclusively on the case of *Resnick v. Manfredy* in support of its assertion that there is general personal jurisdiction over Defendant. In *Resnick*, the court found that it had general personal jurisdiction over a defendant law firm that had no "office or affiliate" in Pennsylvania. 52 F. Supp. 2d at 467. Significantly, however, even though the firm's attorneys worked exclusively from another state, the firm had fifty-four past and present clients who were Pennsylvania residents. Here, Plaintiff has provided evidence that, since February 2008, Defendant has on at least sixteen occasions contracted with at least two Pennsylvania clients to service at least eleven cars. Even though Defendant has collected approximately $200,000 in fees from these two clients, the amount of income received is not a deciding factor in the general jurisdiction analysis. *See Brown*, 2002 WL 32345935, at *7 (finding that "in analyzing the contacts between a defendant and the forum state, the size of any income or percentage of sales derived from Pennsylvania is 'irrelevant'" (quoting *Gehling*, 773 F.2d at 543)). Clearly, Defendant's activities in Pennsylvania are not "extensive or pervasive." Plaintiff has proffered no evidence that Defendant's employees ever entered Pennsylvania to do business, or that they ever advertised in Pennsylvania by publication, mailings, or otherwise. Having only two Pennsylvania clients in addition to Plaintiff, out of over 1000 clients, does not establish the continuous and systematic contacts necessary for the exercise of general jurisdiction.

B.     **Specific Personal Jurisdiction**

The Third Circuit has set forth a three-part inquiry for deciding whether specific personal jurisdiction exists. *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009); *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). First, the defendant must have "purposely directed its activities toward the forum." *Pilatus Aircraft*, 566 F.3d at 102 (internal quotation marks omitted). Second, the litigation must arise out of or relate to at least one of those activities. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977) (noting that in determining whether minimum contacts are present, courts focus on "the relationship among the defendant, the forum, and the litigation"). These two steps involve proving the necessary "minimum contacts," which means establishing "'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Third, if the first two requirements are met, the court must determine whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). Once a defendant raises the defense of lack of personal jurisdiction, "the plaintiff bears the burden to prove, by a preponderance of evidence, facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank*, 954 F.2d at 146.

To establish specific personal jurisdiction, a defendant must have purposefully directed activity toward the forum state. Although physical entrance is not required, a "deliberate targeting of the forum" is necessary. *O'Connor*, 496 F.3d at 317. The mere existence of a contract between citizens of different states is not enough by itself to establish the requisite minimum contacts.

*Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (citing *Burger King*, 471 U.S. at 478). However, a contract is often an "intermediate step between past negotiations and future transactions," and such factors can be evidence of minimum contacts. *Id.* Taking a "highly realistic" approach in analyzing minimum contacts requires consideration of the terms of the contract, along with past communications and the anticipated future consequences. *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc*. 988 F.2d 476, 482 (3d Cir. 1993); *Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992). Consideration of all mail and wire communications sent by a defendant into the forum is required, since "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines." *Grand Entm't*, 988 F.2d at 482 (quoting *Burger King*, 471 U.S. at 476); *see also Schnader, Harrison, Segal & Lewis, L.L.P. v. Basic Capital Funds, Inc.*, No. 99-4655, 2000 U.S. Dist. LEXIS 13501, at *7-8 (E.D. Pa. Sept. 21, 2000) (finding that plaintiff established defendant's minimum contacts through a number of telephone, mail, facsimile and electronic communications in addition to three payments made to plaintiff). Thus, plaintiff must identify "some purposeful contact" with the forum to satisfy this first requirement. *O'Connor*, 496 F.3d at 318; *see also Burger King*, 471 U.S. at 476 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction.").

In the instant case, Defendant has engaged in sufficient communications with Plaintiff to satisfy the first requirement. The contract between the parties, while not enough by itself to confer jurisdiction, is evidence of the ongoing contacts between the parties over a period of more than eight months. *See Budget Blinds, Inc.*, 536 F.3d at 261 (finding that a contract between citizens of different states is not enough by itself to establish the requisite minimum contacts but is often an "intermediate step between past negotiations and future transactions," which can be evidence of

minimum contacts).  After an initial telephone call from Plaintiff, Defendant requested and then accepted delivery of the Aston Martin, which was titled in Pennsylvania.  (Sholder Aff. ¶ 5); *see also Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1126-27  (W.D. Pa. 1997) ("When a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.' . . . If [the defendant] had not wanted to be amenable to jurisdiction in Pennsylvania, . . . it could have chosen not to sell its services to Pennsylvania residents.").  We attach little significance to Defendant's assertion that Plaintiff's business was unsolicited.  *See Carteret Sav. Bank*, 954 F.2d at 150; *see also Gen. Elec.*, 270 F.3d at 151 (finding that in the business context, "the intention to establish a common venture extending over a substantial period of time" is a more important consideration than which of the parties initiated the relationship).  After Defendant inspected the car, Defendant's Service Manager contacted Plaintiff in Pennsylvania to discuss the terms of the contract.  (Sholder Aff. ¶¶ 6, 7.)  Even though the alleged breach of the contract to fix the Aston Martin occurred outside of Pennsylvania, the negotiations surrounding the formation and execution of the contract are a factor in the minimum contacts analysis.  *See Grand Entm't*, 988 F.2d at 482.

Next, Plaintiff has established "extensive back-and-forth" discussions between its employees and Defendant's employees.  This is a factor in the minimum contacts analysis.  *See Harmelin v. Man Financial Inc.*, No. 06-1944, 2007 WL 2932866, at *2 (E.D. Pa. Oct. 2, 2007); *see also Grand Entm't*, 988 F.2d at 482 ("Contract negotiations with forum residents can empower a court to exercise personal jurisdiction over persons outside the forum.").  After an agreement was formed, the owner of Plaintiff corporation in Pennsylvania and the service manager of Defendant corporation in New York spoke on the phone "several times per week" during the "trial and error" process of fixing the car.  (Sholder Aff. ¶¶ 10, 11.)   After the owner of Plaintiff corporation

became "frustrated" by the number of phone calls and requests for additional payment, he contacted the owner of Defendant corporation and engaged in multiple communications by telephone and email over the next several months. (*Id.*)  Moreover, after the car caught fire, the owner of Plaintiff corporation and the owner of Defendant corporation "had many conversations by telephone and email" in an attempt to determine how Defendant would reimburse Plaintiff for the loss of the car. (*Id.* at ¶ 19); *see also Hodgson v. Man Fin. Inc.*, No. 06-1944, 2006 WL 3791341, at *4 (E.D. Pa. Dec. 22, 2006) ("More significant are the large number of e-mail communications that were exchanged between [parties] . . . [W]hen taken as a whole, they indicate a flow of communications back and forth between Pennsylvania and the Cayman Islands sufficient to carry, at this stage, [plaintiff's] burden of establishing minimum contacts.").

Finally, the agreement between the parties contemplated Defendant having certain additional contacts with Pennsylvania. *See Burger King*, 471 U.S. at 479 ("It is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.").  Defendant was expected to return the car to Plaintiff in Pennsylvania on a flatbed truck. *See North Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 690 (3d Cir. 1990) (noting that defendant's actions in forming an agreement to reserve storage space in Pennsylvania, coupled with consecutive payments made to plaintiff, indicates sufficient minimum contacts even though the storage space was never used).  In addition, Defendant was to bill Plaintiff in Pennsylvania.  In fact, Defendant did reach into Pennsylvania soliciting and accepting a $6,000 payment from Plaintiff and additional payments

were anticipated.[4] *See Burger King*, 471 U.S. at 473-74 ("Where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities" (quoting *Kulko v. California Superior Court*, 436 U.S. 84, 96 (1978))).

Defendant cites the case of *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod*ucts in support of its position. Defendant's reliance on this case is misplaced. In *Vetrotex*, plaintiff in Pennsylvania solicited the defendant in California to obtain the contract. The agreement was signed outside of Pennsylvania, and no product was shipped from, through or to Pennsylvania. 75 F.3d at 151-52. Moreover, defendant's payments were sent to plaintiff's out-of-state office, not Pennsylvania. *Id.* at 151. The Third Circuit found that personal jurisdiction over the California defendant did not exist. In this case, unlike *Vetrotex*, Defendant is not a "passive buyer." *Id.* at 152. Rather, Defendant entered into an oral contract with a Pennsylvania corporation, accepted a car titled under Pennsylvania law and sent from Pennsylvania, engaged in multiple communications with Plaintiff in Pennsylvania over many months, and solicited and received payment from Pennsylvania. *Id.*

Similarly, the case of *Z-Man Painting, LLC v. Generation Builders*, *Inc.*, cited by Defendant, is easily distinguished. In *Z-Man*, this Court found no personal jurisdiction over an out-of-state defendant which had agreed to contract with a Pennsylvania painting company which had solicited the business. No. 04-4489, 2006 WL 47378, at *4 (E.D. Pa. Jan. 6, 2006). In *Z-*

---

[4] Defendant argues that since this payment was made by credit card, it did not come from Pennsylvania. However, even if the payment is made through a credit card service, Plaintiff made the payment from its address in Pennsylvania. *See Johnson v. Phelps*, No. 05-5555, 2007 WL 1030086, at *4 (E.D. Pa. Mar. 30, 2007) (rejecting defendant's argument that phone calls which were rerouted should be excluded from the "minimum contacts" analysis).

*Man*, "the *only connection* to Pennsylvania was the fact that the plaintiff was incorporated there and had included a handwritten Pennsylvania address on some of its invoices." *Id*. (emphasis added). This was not sufficient.

With regard to the second requirement of specific jurisdiction, a plaintiff's cause of action must arise out of or relate to at least one purposefully directed activity toward the forum state. "The animating principle behind the relatedness requirement is the notion of a tacit quid pro quo that makes litigation in the forum reasonably foreseeable." *O'Connor*, 496 F.3d at 322. The court looks at the "totality of the circumstances" to determine if the relatedness requirement has been met. *Harmelin*, 2007 WL 2932866, at *4. The extent of this relatedness requirement varies depending on the nature of the dispute. *See Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001) (analyzing specific jurisdiction over contract and tort claims separately). In cases involving contracts, the relatedness concept is "a question of 'substantive relevance.'" *Harmelin*, 2007 WL 2932866, at *3. What matters is whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach. *O'Connor*, 496 F.3d at 319. In torts cases, there is no specific test to determine if the cause of action is sufficiently related to the defendant's activity. The Third Circuit considers each case individually and requires more than but-for causation, but less than proximate causation. *O'Connor*, 496 F.3d at 322. The causal connection must be "intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable." *Id.* at 323. Each case is analyzed in light of the policy behind the relatedness requirement: the reciprocity principle. *Id.* With each contact the defendant directs toward the forum state, the state confers the benefits and protections of its laws. *Id; see Int'l Shoe*, 326 U.S. at 316. Taking advantage of the benefits of a state's laws requires a defendant to take on the burden of the possibility of litigating a lawsuit there.

Plaintiff has established the second requirement.  Plaintiff has established that the many contacts which Defendant had with Pennsylvania are related to the instant action.  *See Harmelin*, 2007 WL 2932866, at *4.  Plaintiff has three claims:  breach of contract, negligence, and unjust enrichment.  The breach of contract claim meets the "substantive relevance" standard.  Defendant's telephone and email contacts with Plaintiff were instrumental in the formation and performance of the contract to fix the Aston Martin.  *See Gen. Elec. Co v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001); *Harmelin*, 2007 WL 2932866, at *3.  Similarly, the unjust enrichment claim is directly related to Defendant's contacts with Plaintiff.  The negligence claim meets the relatedness requirement for torts claims, since the cause of action arises out of Defendant's alleged negligence in handling the car.  The "tort-out/harm-in" provision of Pennsylvania's long-arm statute encompasses causing harm within Pennsylvania by a tortuous act outside of Pennsylvania.  42 Pa. Cons. Stat. Ann. § 5322(a)(4); *Pennzoil Prods. Co. v. Colelli & Assocs., Inc.*,149 F.3d 197, 201 (3d Cir. 1998); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776-78 (1984) (holding that committing a tort with effects within the forum state can justify the exercise of personal jurisdiction).  Defendants used a "trial-and-error" method to fix the engine, and before each service performed, Defendant would contact Plaintiff to obtain consent. (Sholder Aff. at ¶¶ 9, 10).  The tortuous conduct occurred in New York, and the harm was felt in Pennsylvania.

If the first two requirements are fulfilled, then Defendant must show that the exercise of jurisdiction does not comport with the notions of fair play and substantial justice.  *See Int'l Shoe*, 326 U.S. at 316.  There has been no such showing.  As long as the first two requirements are satisfied, this third requirement is usually not difficult to satisfy.  *Leone v. Cataldo*, 574 F. Supp. 2d 471, 482 (E.D. Pa. 2008).  The existence of minimum contacts makes jurisdiction

presumptively constitutional, and the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.; see also Grand Entm't,* 988 F.2d at 482 (stating that the "burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy"). What is required is that the forum must be reasonable. It does not have to be convenient. *Id.* (citing *O'Connor*, 496 F.3d at 325). Defendant, a New York company, has not provided any evidence to prove that litigating in Pennsylvania would be burdensome.

## IV.   CONCLUSION

We are satisfied that this Court has personal jurisdiction over Defendant under the specific jurisdiction theory. Plaintiff has established the necessary minimum contacts. For the foregoing reasons, Defendant's Motion is denied.

An appropriate Order follows.

BY THE COURT:

_____
**R. BARCLAY SURRICK, J.**